**Joseph M. PARSONS, Petitioner,**

v.

**Hank GALETKA, Respondent.**

**No. 95–CV–292–S.**

United States District Court,
D. Utah,
Central Division.

July 15, 1999.

Gregory J. Sanders, Kirk G. Gibbs, Kipp & Christian, Salt Lake City, Utah, Ronald J. Yengich, Yengich Rich & Xaiz, Salt Lake City, Utah, for petitioner.

Kris C. Leonard, Thomas B. Bunker, Utah Attorney General's Office, Salt Lake City, Utah, David E. Yocum, Office of the District Attorney, Salt Lake City, Utah, for respondent.

## ORDER

SAM, Chief Judge.

The petitioner, Joseph Mitchell Parsons, an inmate at the Utah State Prison, filed this action for a writ of habeas corpus under 28 USC § 2254 seeking relief from his conviction in the Utah courts for First Degree Murder and a sentence of death. The case was referred to the magistrate judge under 28 USC § 2254. The magistrate judge made a report and recommendation that the petition for habeas corpus be denied. No objection has been taken to the report and recommendation. Parsons has indicated to the court that he does not wish to pursue further federal remedies. The court has reviewed the file and hereby adopts the report and recommendation of the magistrate judge. Therefore,

**IT IS HEREBY ORDERED** the petition of Joseph Mitchell Parsons for a writ of habeas corpus under 28 USC § 2254 is **DENIED.**

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

Petitioner, Joseph M. Parsons, an inmate at the Utah State Prison (USP) at Draper has filed a petition for habeas corpus under 28 USC § 2254. The petitioner was convicted on a plea of guilty of murder in the first degree, aggravated robbery, and theft of an operable motor vehicle in Fifth District Court, Iron County, State of Utah, which offenses allegedly occurred August 31, 1987. He was sentenced to death on January 29, 1988 after a jury trial on the capital sentence.

Petitioner appealed his conviction to the Utah Supreme Court which affirmed the conviction and sentence. *State v. Parsons*, 781 P.2d 1275 (Utah, 1989). On petitioner's's appeal to the Utah Supreme Court, he challenged the constitutionality of the Utah capital offense statute as denying due process and violating double jeopardy. The double jeopardy argument was rejected and the claim of denial of due process was also rejected, both results based on the fact that defendant entered an unconditional plea of guilty, thereby waiving defects in the jury process or in the alleged unconstitutional manner of determining guilt. No challenge was made to the peti-

tioner's plea of guilty before the Utah Supreme Court, 781 P.2d at 1278, or in any other proceeding.

Petitioner claimed defects in the sentencing proceeding conducted under Utah Code Ann. § 76-3-207. Petitioner sought to have the death sentence vacated and a life sentence entered. *Id.* at 1279. The Utah Supreme Court found the standards applied in the trial court were proper and in accord with the Utah Supreme Court's instructions in *State v. Wood*, 648 P.2d 71, 83-85 (1982). The petitioner challenged the special verdict form submitted to the jury whereby it was required to answer yes or no as to whether three aggravating circumstances were proved by the evidence beyond a reasonable doubt. The Utah Supreme Court upheld the use of the special verdict form. *Id.* at 1280.

Petitioner challenged the discriminatory application of the death penalty as to him.[1] The argument was actually an argument for a proportionality review which is not constitutionally required, *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), and has not been adopted by the Utah Supreme Court as a part of the Utah death penalty procedure.[2]

The petitioner also challenged the actions of the trial judge, the admission of other aggravating circumstance evidence beyond the charged aggravating conduct, alleged improper influence because another district judge sat in the courtroom and watched his son who was prosecuting the case, and alleged improper closing argument by the prosecutor. All of these matters were rejected, by the Utah Supreme Court as a basis for a reversal.

Petitioner raised an issue as to contact between a juror and a witness. *Id.* at 1284. The petitioner had waived any prej-

udice claim on that matter in the state trial court, however, the Utah Supreme Court said it would consider the merits of the claim because of the death verdict. A record on the contact issue was made in the trial court. Defense counsel indicated he was not sure there was any prejudice and he would not move for a mistrial. The Utah Supreme Court, however, did not decide the matter of prejudice but found that petitioner had invited any error and could not make a challenge for reversal based on the incident.

Finally, the petitioner raised a claim of instructional error on the basis of failure to give a "two reasonable hypotheses" instruction, which claim was rejected as contrary to settled Utah law.[3]

Thereafter, petitioner pursued a petition for habeas corpus relief in Third District Court, State of Utah.[4] That court denied habeas corpus relief and the petitioner's case was again appealed to the Utah Supreme Court. The Utah Supreme Court affirmed the denial of post conviction relief. *Parsons v. Barnes*, 871 P.2d 516 (Utah, 1994). The petitioner claimed ineffectiveness of trial counsel. Eight allegations of ineffectiveness were raised on appeal before the Utah Supreme Court.

First, it was contended petitioner was denied due process of law under the Sixth and Fourteenth Amendments to the United States Constitution because the Iron County attorney, after charges had been filed, took sworn recorded statements from witnesses, akin to depositions, without notice to and attendance by petitioner or counsel. Second, ineffectiveness was claimed because defense counsel allegedly advised petitioner to plead guilty as charged to capital homicide without obtaining any meaningful benefit. Third,

---

1. Parsons is not a minority person.

2. That claim has not been presented to this court under 28 USC § 2254.

3. On initial appeal to the Utah Supreme Court, petitioner was represented by attorney

James L. Shumate who had also represented petitioner at trial.

4. At petitioner's habeas corpus proceedings, he was represented by Gregory Sanders and Ronald J. Yengich who represent him in the petition before this court.

counsel failed to adequately explore the contact between a juror and a prosecution witness. Fourth, counsel failed to file discovery motions or formal requests for discovery material. Fifth, defense counsel advised Parsons that he could only waive his preliminary hearing by pleading guilty as charged. Sixth, counsel failed to spend adequate time with petitioner in order to prepare a defense. Seventh, it was asserted that defense counsel was ineffective because he failed to object to the verdict form that asked for the jury's findings on three aggravating circumstances where only one existed under the law, and eighth, counsel failed to explore the need for and ask for a change of venue.

The opinion of the Utah Supreme Court treated the "deposition" issue, as argued by appellate counsel, as raising a due process right for counsel and the petitioner to be present and a right of confrontation at the time the statements were taken. 871 P.2d at 518–521. The Utah court observed that on the same day that petitioner was charged, the prosecutor took statements from two witnesses under oath. One was from the victim's wife, Beverly Ernest, and the other from Chad Williams, an employee at a convenience store to which petitioner had taken the victims' vehicle, changed his clothes, cleaned out the car, and discarded the victim's personal property. The Utah Supreme Court reviewed the merits of Parson's arguments. *Id.* at 519. The court concluded that depositions were not taken, as could be done under Rule 14, Utah R.Cr.P. The action was an investigation and was only to take sworn statements by a careful prosecutor/investigator. The court concluded this was not a violation of due process and that Parsons benefitted by the preservation of the evidence when it was fresh in the minds of the witnesses. *Id.* at 520.

The court found there was no Sixth Amendment violation of the right to confrontation since the live witnesses were called at trial. The court also found any threat of a possible perjury prosecution did not show any chilling effect on their testimony and the oath probably had its "intended effect" of obtaining the truth. *Id.* at 520. The statements were not introduced into evidence at trial.

The court's decision on the claim of denial of counsel at the taking of the sworn statements did not consider whether any right to counsel existed, at that time but that there was no indication the benefit of counsel, at that time, would have been different from the cross-examination at the sentencing hearing. *Id.* at 521. The court found no constitutional violation and then addressed the issues of ineffective assistance of counsel.

The Utah Supreme Court stated there were thirteen claims of ineffectiveness of counsel, made in the habeas trial court but, as noted before, the petitioner's post conviction brief on appeal, listed eight claims and those were all the claims presented on appeal from the post conviction hearing.

A more specific discussion of the Utah Supreme Court's post conviction ruling is required. On the first issue, the failure of defense counsel to object to the taking of sworn statements by the prosecutor was alleged as a basis for relief. However, because the Utah Court found there was nothing wrong in that procedure, the failure to object could not be a basis for a claim of ineffectiveness of counsel.

The court addressed the claim of the alleged lack of substantial investigation by counsel. The Utah Supreme Court stated that petitioner has "consistently maintained" he reacted violently to the victim's homosexual advances and petitioner claimed there was inadequate investigation and an autopsy should have been requested and a private investigator provided. The court noticed there was no evidence of the victim being a homosexual and the evidence was of the victim's heterosexual relationships. The Utah court found petitioner had not met the prejudice prong requirement for relief under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984). Actually, the record in this case also shows counsel had an autopsy examination report that showed no evidence of anal sexuality.

As to petitioner's contention that counsel advised him to plead guilty to first degree murder without any benefit being received in return, the Utah court concluded this was part of a "a legitimate trial strategy and was therefore professionally reasonable." 871 P.2d at 524. Defense counsel had testified at the state habeas hearing that the plea of guilty would blunt the effect of the evidence presented during sentencing. The Utah court said the strategy was legitimate and petitioner did receive the benefit of being able to waive the preliminary hearing which he strenuously wished to do. *Id.* at 525.

The court also noted petitioner could not claim ineffectiveness of counsel based on the prosecutor's refusal to waive a preliminary hearing that allegedly pressured petitioner to plead guilty, because under Rule 7(g)(1) U.R.Cr.P. the prosecutor's consent was necessary to waive a preliminary hearing. The prosecutor had a right to refuse to waive the preliminary hearing. *Id.* at 525. Further, defendant could show no prejudice in either issue. The petitioner did not claim he would have gone to trial if he had not been advised to plead guilty. 871 P.2d at 525. See *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

On the issue of juror-witness contact, the court observed the issue had been raised on direct appeal and that no error had resulted from the contact and any objection of counsel would have been futile.

The Utah court addressed the failure to file discovery requests. It noted that under Rule 16, U.R.Cr.P. informal discovery was authorized and disclosure in this case was informal. An open file policy was in existence. The prosecutor had given Parson's counsel everything from "day one" and no evidence was used that had not been disclosed. 871 P.2d at 526. The court also concluded no prejudice had been shown.

On the inadequate trial preparation claim, the evidence in the State habeas hearing was conflicting. The evidence was that counsel spent between four and twenty hours with the petitioner. The Utah Supreme Court declined to find any particular amount of consultation time was required and declined to grant any relief because the petitioner had not shown prejudice.

The Utah Supreme Court addressed the question of whether counsel had failed to conduct an adequate voir dire examination of the jurors. This was not raised as a specific issue in appellant's brief on appeal in the post conviction proceedings but was addressed in the brief of the appellee. The petitioner then addressed the issue in his reply brief and the Utah Supreme Court addressed the issue. The issue was also apparently not a part of the post conviction trial judge's findings of fact and conclusions of law (addendum 4, respondent's supplemental material in this court). The trial judge asked jurors whether and from what source they had heard or read anything about the case. Parsons claimed they should have been asked *"what"* they had read. The extent of juror exposure to media reporting on the case was disclosed in the voir dire. The Utah court said there was no demonstration that further inquiry would have altered the outcome of the sentencing hearing. Therefore, the ineffectiveness claim failed.

On the issue of the verdict form, petitioner argued on direct appeal the effect of a special verdict form on aggravating circumstances was to mislead the jury to find only aggravating circumstances and not consider mitigating circumstances. He also claimed special verdict forms should be forbidden in capital cases or the form include both aggravating and mitigating circumstances. The Utah court noted it had rejected these arguments in the direct appeal.

The Utah Supreme Court observed in the habeas case, that the verdict form contained three questions. First, was whether the jury found, beyond reasonable doubt, an intentional killing was in the course of an aggravated robbery. Second, was whether the victim was killed for financial gain and third, whether petitioner "being a person on parole, knowingly possessed or had in his custody or under his control a firearm." 871 P.2d at 527. This later circumstance was not an *element* aggravator in the first degree murder information.[5] The Utah court, however, said that under Utah law the aggravating facts in the sentencing phase were not limited to the statutory aggravators defining the offense. The same standard applied to mitigating factors that are also listed in Utah Code Ann. § 76–3–2.

Petitioner argued counsel did not object because the jury form omitted the aggravating circumstance of being previously convicted of a felony involving the use or threat of violence to another, he intentionally or knowingly caused the death of another. (See § 76–5–202(h)). This was one of the aggravated elements to which petitioner pled guilty and was in the information. 871 P.2d at 527. The Utah court said to include it in the verdict form would have been superfluous.[6] It was a matter of evidence, its omission from the jury form might have worked to petitioner's benefit.

Petitioner also challenged the use of the robbery aggravator and the pecuniary gain aggravator as "double-counting" since it was asserted robbery necessarily involves the element of pecuniary gain. The Utah Supreme Court agreed.[7] The Court said in the *future* in a robbery case the pecuniary gain, aggravator should not be used. However, referring to the prejudice prong of *Strickland, supra,* the Court found it was not present because the instructions to the jury required that the *totality* of the aggravating circumstances had to outweigh the mitigating circumstances beyond a reasonable double "*not in terms of the relative numbers* ... but in terms of their respective *substantiality and persuasiveness.*" *Id.* at 529. This instruction, the court concluded, eliminated any prejudice under *Strickland.*

Finally, petitioner argued that he had a constitutional right to state-compensated counsel in his state habeas proceedings. Petitioner was represented by counsel, but apparently counsel was not compensated.[8] The Utah Supreme Court rejected the contention as a basis for relief.

Petitioner sought a rehearing before the Utah Supreme Court which was denied. He also sought review by writ of certiorari to the United States Supreme Court, which was also denied. The petition in this court is the first effort at federal habeas relief sought by petitioner.

Petitioner has sought relief in this court pursuant to 28 USC § 2254. The petition was made prior to the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the petition is considered under the provisions of 28 USC § 2254 existing at the time the petition

---

5. In Utah there are statutory aggravating circumstances which are elements of the offense for first degree murder and have to be proved beyond a reasonable doubt in the guilt phase. See Utah Code Ann. § 76–5–202 (1987 version). This approach still exists.

6. It should be noted that defendant pled guilty and thereby admitted the aggravating factor.

7. This is not necessarily true, depending on the circumstances. A person may take property from the person or presence of another but not have any motivation of pecuniary gain, but actually intend only a loss to the victim. A person who is offended at the way the victim keeps animals may take them by freeing them but with no personal gain but to deprive the victim of the animals. Other such circumstances can easily be envisioned. The item taken may not have pecuniary worth to the defendant. However, in this case, the elements did overlap.

8. Petitioner's counsel, in these proceedings has been granted compensation under 21 USC § 848(q)(4)(B).

was filed. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The petition lists three categories of claims of error for relief. First, a claim of denial of due process under the sixth and fourteenth amendments because the prosecuting attorney took depositions from witnesses after charges had been filed. This issue was raised on direct appeal and on collateral challenge in the Utah courts. Second, petitioner has raised claims of ineffective assistance of counsel. The claims are eight in number and are substantially similar to those raised in the state post conviction petition with some variations. Third, the petitioner contended he had a federal constitutional right to paid counsel in his state post conviction proceedings.

The respondent, warden of the Utah State Prison, Hank Galetka, was ordered to respond (File Entry # 9). The respondent made a motion to dismiss the petition (File Entry # 18). A memorandum with attachments was filed (File Entry # 19). The memorandum contains the basis of the respondent's motion to dismiss. The respondent claims that several of the issues raised were unexhausted claims and that some of the claims are precluded under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Petitioner submitted a memorandum in opposition to the motion to dismiss. The petitioner contends there has been full exhaustion of state remedies (File Entry # 23) and that *Teague v. Lane, supra,* was inappropriate (*Id.*).

A hearing was held on the motion to dismiss and on the merits of the petition (File Entry # 34). At that hearing, three witnesses were called by the petitioner. James Shumate, petitioner's counsel at petitioner's state trial and on his first appeal, was called. Edward Barton an investigator for petitioner testified. Petitioner testified. Respondent submitted a trial brief (File Entry # 36) as did petitioner (File Entry # 38).

At the hearing before this court, James L. Shumate, petitioner's counsel, testified he was a sole practitioner. He had served as the Iron County Attorney for four years (prosecutor) and as a public defender for eleven years on contract (Tr. pp. 26–27). Shumate had been associate counsel in one capital case and lead counsel in two others prior to his representing Parsons (Tr. p. 27). When Shumate was a prosecutor he also had training in capital cases (Tr. p. 28).

Shumate, petitioner's counsel, received a flat fee of $10,000 for representation of Parsons. An investigator could have been employed at the time but one was not used (Tr. p. 30). Parsons did advise Shumate that the victim had made homosexual advances to Parsons (*Id.*). Shumate spoke informally with the family of the deceased, Mr. Ernest, about the matter (Tr. p. 31). He did not directly ask if the deceased was a homosexual, but asked the deceased's wife, from whom the deceased was estranged, what information she could provide that would support Parson's claim (Tr. p. 32). There was information that the deceased, after the separation from his wife, lived with a person named Bruce Opt (Tr. p. 37). The deceased was going to Colorado when he was killed to live with a person named John Longstrom (Tr. p. 33). Shumate never spoke to Longstrom. Shumate did discuss the alleged homosexual aspect of the case with J. Lowe Barton, an agent with the Utah Department of Adult Probation and Parole, who prepared the presentence report (Tr. at. 34; Ex. at 12). There was information in the report about Parsons having homosexual contact at the Nevada State Prison (Tr. p. 35). No inquiry was made by Shumate about that matter. That matter was left alone (Tr. p. 35–36). It would have been adverse to Parson's claim of a severe reaction to the deceased's homosexual advance as mitigation for the killing (Tr. p. 36).

Shumate testified he did "hundreds of hours" of legal research. He spent two or three days with the Salt Lake Legal defender's office talking to that organization's leading attorneys about the case,

and spoke to the deceased victim's family members about the deceased's sexual orientation (Tr. p. 39). He talked about the reasons for the dissolution of the victim's marriage. He asked about Mr. Opt and was advised he was a friend of the deceased (Tr. p. 40). They worked together and had a long standing friendship (*Id.*). No inquiry was made of Mr. Longstrom, the man the deceased was going to Colorado to live with. The victim, Mr. Ernest, was a carpenter in the construction business (Tr. p. 41). Shumate had no independent evidence that the victim was a homosexual (Tr. p. 41). He examined the autopsy report to determine if the deceased had a physical condition in the anal area that would suggest homosexual behavior. There was no such indication (*Id.*).

The petitioner had consistently told Shumate that petitioner was not a homosexual, had no such inclinations or relationships, and was heterosexual (Tr. p. 43).

The presentence report was never presented to the jury (Tr. p. 45). The defense strategy was to present the case as petitioner having killed the victim due to the homosexual attack and to remain consistent in that position (Tr. pp. 45–46). The prosecution introduced no evidence to impeach Parsons on this point (Tr. p. 46). Shumate did ask the victim's wife if the marital breakup was due to any extramarital affair, but did not specifically ask about homosexuality (Tr. pp. 47–48).

Edward M. Barton, an investigator, was retained by post conviction counsel in this court, to find background information about the victim, Mr. Ernest (Tr. p. 53). Ernest was from Southern California and Barton went to Los Angeles to determine if there was evidence of homosexuality (Tr. p. 53). He was unable to find persons who had such information (Tr. p. 54). He was unable to find Bruce Opts and knew of no other areas of investigation as to Opts (Tr. p. 54). Barton found no information as to Opt's sexual orientation (Tr. p. 55). Also,

there was no history of any criminal activity as to Ernest (*Id.*).

Barton testified (Tr. p. 55, line 16–24):

Q Sitting here today, are you aware again as an experienced investigator of anything else that could be reasonably done in cost, effort and that to obtain additional information about the sexual orientation of Mr. Ernest that has not been done?

A No. And particularly in view of the testimony of Mr. Ernest's family, that to pursue family members did not seem to be fruitful to me, and that's why I did not do it because of the testimony at the sentencing hearing.

Barton said more witnesses might have been available in 1988, however, this was speculation (Tr. p. 56). Barton checked and determined that the Nevada State Prison had transmitted a report to Utah that petitioner had been involved in a homosexual relationship in that prison (Tr. p. 56). The report was forwarded to Utah authorities for the presentence investigation. A confirmation could not be made by Barton. There was no evidence of any homosexual activity by Parsons at the Utah State Prison (Tr. p. 57). Barton said he had made an investigation of what could be done (Tr. p. 58). There was no evidence that Parsons was ever a victim of prison rape or that he had become homophobic (Tr. pp. 60–61).

Petitioner, Joseph M. Parsons, testified (Tr. p. 62). He saw defense counsel about two to three days following his arrest. Parsons told Shumate what happened with Ernest after Parson's arrest and his detention at the Iron County Jail (Tr. p. 63). Parsons testified to his version of the events including the killing of Ernest at the rest stop in Southern Utah between two and three o'clock in the morning of August 31, 1987 (Tr. p. 64). Parsons testified that Ernest made an aggressive homosexual attack on Parsons, grabbing him and calling him names and preventing Parsons from leaving the vehicle in which the two were located. As a result, Parsons

stabbed Ernest numerous times, killing him (Tr. pp. 68–69). This was the story Parsons provided to Shumate.

Parsons denied he had crab lice while in the Iron County Jail, although one prisoner on the tier where Parsons was confined had such a malady and all inmates were deloused. This, Parsons said, could be a reason why the presentence report said he had such a condition (Tr. p. 70). Parsons denied he had any homosexual experience while he was in the Nevada State Prison (Tr. p. 71). The presentence report that contained such information referred to a person named Hank, who Parsons said was his crime partner with whom he had been arrested (*Id.*). They were not housed in the same Nevada prison (Tr. pp. 71–72). Parsons testified at the Utah trial sentencing hearing to the circumstances of the killing as well as to other details of his life (Tr.Vol. IV., January 28, 1988, 5th District Court, pp. 1000–1144). Parsons was twenty-three years old at the time (Tr.Vol. IV at 1000). Parsons' testimony at the sentencing hearing went well beyond the issues pertinent to his habeas petition. At his habeas hearing in this court, the record of some of Parsons' testimony about the event was submitted by the respondent's counsel (Tr. pp. 75–78). However, the information and examination of Parsons about the killing was tangential to this petition, at best (See Tr. pp. 78–82).

The first time Parsons met with his attorney, the events of the stabbing were fully discussed (Tr. p. 83). Nothing about crab lice was presented to the jury (Tr. p. 84). The jury's verdict under Utah procedure was binding on the sentencing judge.

The amended information on which the petitioner was prosecuted [9] charged as to the offense of murder in the first degree (state file p. 1).:

*Count I:* MURDER IN THE FIRST DEGREE, a capital felony, in violation of Title 76, Chapter 5, Sections 201 and 202, Utah Code, as amended, in that said Joseph Mitchell Parsons, on or about the 31st day of August, 1987, in Iron County, State of Utah, intentionally or knowingly caused the death of another, to wit: Richard L. Ernest, under any of the following circumstances:

1. While the said Joseph Mitchell Parsons was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit aggravated robbery, and/or

2. For pecuniary gain, and/or

3. While the said Joseph Mitchell Parsons having previously been convicted of a felony involving the use or threat of violence to a person.

It was filed on September 10, 1987.[10]

On September 17, 1987, the petitioner, with the consent of the prosecution, which had originally objected, waived preliminary hearing (state record file p. 76). The state record also reflects petitioner's counsel, prior to sentencing, received a psychological evaluation on petitioner on November 7, 1987 from Dr. Robert J. Howell, a forensic psychologist (Document file). Records of petitioner's prior criminal conviction were also available to defense counsel (*Id.*).

The petitioner appeared in Fifth District Court, Iron County, Utah on September 18, 1987 and entered a plea of guilty to all charges in the amended information (state record at 87). A plea of guilty to a capital felony was authorized by Utah law, Utah Code Ann. § 76–3–207(1) (1982). A presentence report was prepared, but the sentencing jury did not see it.

The petitioner's sentencing trial began January 25, 1988, pursuant to Utah Code Ann. § 76–3–207 (1982). The petitioner was tried before a jury (state record at 157). The jury was instructed, after hearing the evidence (state record at 252–254).

---

**9.** Utah uses an information as the prosecuting document throughout all stages of court proceedings.

**10.** The original information was filed on September 2, 1987 (Record state file at 75).

The jury was instructed in accord with Utah law that after considering the totality of the circumstances, that the death penalty could only be imposed if the total aggravating circumstances outweighed the total mitigating circumstances beyond a reasonable doubt. In addition, the jury had to be persuaded beyond a reasonable doubt that the imposition of the death penalty was "justified and appropriate in the circumstances." (*Id.* at 265, instruction No. 12). The jury was instructed on the statutory aggravating and mitigating factors and that any other mitigating factor could be considered (*Id.* at 267–78, instruction No. 14).

The court instructed the jury on a special verdict form the court was submitting to the jury (*Id.* at 283, instruction No. 27). The instruction provided:

> When you retire to deliberate, you should appoint one of your fellow jurors to act as foreperson, who will preside over your deliberations and who will sign the verdict to which you agree. In this proceeding a unanimous concurrence of all jurors is required before a verdict can be reached. Your verdict must be in writing and, when found by you, must be returned into court. Two verdict forms have been prepared for your consideration together with three Special Verdict Questions, which will aid in your deliberations, and which must be answered by unanimous finding during your deliberations. If the final vote of the jury members is "No" or less than a unanimous "Yes" as to any Special Verdict Question, then you may not consider the elements of that individual question as aggravating circumstances. Your foreperson will sign the Special Verdict Questions and the verdict which correctly reflects the result of your deliberations.

> The following are the Special Verdict Questions which have been prepared for you:

> After duly considering the evidence and applying the law as instructed, do you find beyond a reasonable doubt that the defendant, Joseph Mitchell Parsons, intentionally or knowingly caused the death of Richard L. Ernest while the said Joseph Mitchell Parsons was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit Aggravated Robbery.

> After duly considering the evidence and applying the law as instructed, do you find beyond a reasonable doubt that the defendant, Joseph Mitchell Parsons, intentionally or knowingly caused the death of Richard L. Ernest for pecuniary gain.

> After duly considering the evidence and applying the law as instructed, do you find beyond a reasonable doubt that the defendant, Joseph Mitchell Parsons, being a person on parole, knowingly possessed or had in his custody or under his control a firearm.

> The Verdict forms which will be furnished to you are as follows:

> We the jury, duly-empaneled in the above-entitled case, unanimously render a verdict imposing the sentence of death.

> OR

> We the jury, duly-empaneled in the above-entitled case, unanimously render a verdict imposing the sentence of life imprisonment.

> Your foreperson will sign the appropriate Verdict form and return both forms to the Court.

State Record at 283–284.

The special verdict instruction and forms said nothing about mitigation factors and no special verdict questions on mitigation were submitted to the jury. However, an instruction was given that the aggravating and mitigating circumstances were not to be counted in numbers, but weighed in the totality. The totality of the aggravating circumstances had to outweigh the mitigating circumstances beyond a reasonable doubt or the death sentence was not proper. The special verdict questions

were submitted to the jury (state record at 297) and answered affirmatively and unanimously as to each of the questions posed. The jury also executed verdict form No. 1, (state record at 299) unanimously imposing a sentence of death. This was on January 29, 1988.

The petition for habeas corpus of Joseph Mitchell Parsons has been referred to the magistrate judge under 28 USC § 636(b)(1)(B). This report and recommendation is submitted on the petition for habeas corpus under 28 USC § 2254.

### Discussion and Analysis

### Taking of Witnesses' Statements Without Petitioner or His Counsel Being Present

In point A of petitioner's petition for habeas corpus he contends his Sixth Amendment rights and his right to due process were violated when on September 2, 1987, the prosecutor, after charges had been filed, took recorded, sworn statements from witnesses. A statement was taken from Beverly Dawn Ernest, the deceased victim's estranged wife. Also, a statement was taken from Chad M. Williams. Williams saw Parsons take certain actions with regard to the victim Ernest's vehicle and personal property following the petitioner killing Ernest.

The petitioner contends these were "depositions" and he and his counsel had a right to notice and to be present. The witnesses were sworn and questioned before a court reporter and their responses to the prosecutor's questions were recorded. The prosecutor questioning Williams referred to the process as taking a statement for purposes of a criminal investigation (See Pl. Exhibit p. 7, Circuit Court, Iron County, State of Utah) (See pp. 2–3 William's statement). Williams was never advised he was subject to perjury for a false answer (*Id.*). This statement was taken by Scott M. Burns, Iron County Attorney.

The statement of Beverly Dawn Ernest, was taken by Deputy Iron County Attor-

ney, Keith F. Oehler. It was a sworn statement before a court reporter. Oehler referred to the matter as a "deposition". Oehler also advised Mrs. Ernest if there were differences in her trial testimony from her statement, the difference could be pointed out to the judge or jury. Oehler advised Mrs. Ernest that he simply wanted the truth (Statement, Exhibit p. 6, Circuit Court, Iron County at 2–3). He did not mention perjury or make any threat. No witness was warned of perjury. No false statements were made by the prosecutors to the witnesses.

Petitioner contends these statements were analogous to a "tainted line up". The witnesses were not threatened or intimidated or told not to speak with defense counsel. See *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (witness threatened and refused to testify); *United States v. Heller*, 830 F.2d 150 (11th Cir.1987) (witness threatened); *United States v. Blanche*, 149 F.3d 763 (8th Cir. 1998) (interference with a defense witness). The Utah Supreme Court characterized the process as a continuation of the investigation by a cautious prosecutor and getting evidence while fresh in the witnesses' minds. *Parsons v. Barnes*, 871 P.2d at 520. Both witnesses testified at trial and the pretrial statements were not introduced into evidence. They were not used as depositions. There was no confrontation issue presented.

The respondent, in the motion to dismiss, urged that if petitioner was referring to other witnesses than Ernest and Williams, that the claim had not been exhausted as required under 28 USC § 2254. However, petitioner in his trial memorandum (File Entry # 38) states that other statements from prisoners at the Iron County Jail were not an issue. Reference is made to a deposition of a highway patrol dispatcher, but only Williams and Mrs. Ernest are discussed. No evidence as to any other person has been presented. The petitioner has only referred to the two statements. Therefore, the issue is con-

fined to two statements and respondent's claim of non-exhaustion must be rejected.

■ The statements were not taken as depositions pursuant to Rule 14(h), U.R.Cr.P. The statements were only investigative recordings of material witnesses' evidence. There is *no* evidence that the process resulted in any false statement or any indication the witnesses' statements were detrimental to petitioner at his sentencing hearing, or beyond their trial evidence. Any suggestion of a chilling influence or adverse effect is purely speculative. "Both sides have an equal right, and should have an equal opportunity to interview [witnesses]." *Gregory v. United States,* 369 F.2d 185, 188 (D.C.Cir. 1966). Petitioner could have done the same. Petitioner had the benefit of access to the witnesses statements and was not surprised.

■ Defendant [petitioner] has a right to be present at every critical stage of the proceedings. *Hopt v. Utah,* 110 U.S. 574, 579, 4 S.Ct. 202, 28 L.Ed. 262 (1884); *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); *Diaz v. United States,* 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *Snyder v. Massachusetts,* 291 U.S. 97, 107–108, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (viewing crime scene in absence of defendant did not deny due process); *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (ex parte communications between judge and juror did not violate accused's right to be present); *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); *Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (defendant had no right to be present during testing of the competency of a child witness); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (probable cause presentation to the judge is not a critical stage where there is a right to counsel).

The defendant's right to be present at a critical stage is rooted to a large extent in the confrontation clause. *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). It is a part of the adversary system. Presence of the accused or counsel during interviews with witnesses has not been considered to be a confrontation right. *United States v. Coven,* 662 F.2d 162 (2d Cir.1981); *Doss v. United States,* 431 F.2d 601 (9th Cir.1970) (no right to be present at lineup interview); *United States v. Parker,* 549 F.2d 1217, 1223 (9th Cir.1977) (same). See also *United States v. Benlian,* 63 F.3d 824 (9th Cir.1995) (counsel not required at presentence interview). The defendant has no right to a prosecutor's interview notes. *United States v. Milikowsky,* 896 F.Supp. 1285 (D.Conn.1994). In this case, petitioner had an exact record of what occurred in the taking of the witnesses' statements and was effectively advantaged in that regard.

A similar conclusion was reached by the Court of Military Appeals (now Court of Appeals of the Armed Forces) in *United States v. Morris,* 24 M.J. 93 (1987) (accused not denied due process or Sixth Amendment rights where prosecutor interviewed a witness but a defense investigator had to interview the witness with judge advocate present). In *State v. Smith,* 235 Mont. 99, 765 P.2d 742 (1988), the court held the confrontation clause did not require defendant to be present during a pretrial interview with the victim.

■ Therefore, it must be concluded that there was no due process or confrontation violation by the prosecutor in this case in taking ex parte sworn statements from witnesses without defendant's presence.[11]

Further, there was no prejudice to petitioner. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

---

**11.** If the interviews had been actual depositions, petitioner would have had a right to be present. See *Lee v. McCaughtry,* 892 F.2d 1318 (7th Cir.1990); *Carter v. Sowders,* 5 F.3d 975, 979 (6th Cir.1993). However, the process was not a deposition. Prosecuting attorney Oehler's characterization was inaccurate, loose language.

▮ The right to counsel exists at all critical stages of the proceedings. However, the interview of witnesses in a non-adversarial proceeding is not a critical state of the proceedings. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Van Nattan v. United States,* 357 F.2d 161 (10th Cir.1966); *United States v. Washington,* 11 F.3d 1510, 1517 (10th Cir.1993). *Claudio v. Scully,* 982 F.2d 798 (2d Cir. 1992) (right to counsel only at "critical stages"). In *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the defendant contended he had a right to counsel at a post indictment photographic display conducted by the prosecutor with witnesses who would be called at trial.[12] The court said the core right to counsel was "when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Id.* at 309, 93 S.Ct. 2568. The court found the photo lineup interview stage not to be critical.

Even if we were willing to view the counsel guarantee in broad terms as a generalized protection of the adversary process, we would be unwilling to go so far as to extend the right to a portion of the prosecutor's trial-preparation interviews with witnesses.

*Id.* at 317, 93 S.Ct. 2568.

The court noted the practice of counsel interviewing witnesses predated the Sixth Amendment and defense counsel could interview witnesses himself. *Id.* at 318, 93 S.Ct. 2568. Cases noted above also apply to presence of the accused or counsel.

▮ There is no right to counsel when a witness views a photograph lineup. *United States v. Barker,* 988 F.2d 77 (9th Cir. 1993). Therefore, the petitioner in this case has no valid claim of a violation of his constitutional rights because counsel was not present at the witness interviews.[13]

### Right to Compensated Counsel in State Post Conviction Proceedings[14]

Petitioner argues he was denied a federal constitutional right by the fact his state post conviction counsel were not paid. He claims this denied him equal protection and due process of law. The position has not been significantly urged in petitioner's trial brief and has been stated to be abandoned.

The respondent contends that petitioner's claim is barred under the doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague,* the Supreme Court held a habeas corpus petitioner may not seek to enforce a "new rule" of law announced after his conviction has become final unless the new rule fits into two narrow exceptions. The first exception is if the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe." 489 U.S.

---

**12.** The Tenth Circuit had held defendant had no right to counsel at such a stage. *McGee v. United States,* 402 F.2d 434, 436 (10th Cir. 1968).

**13.** Respondent argues the petitioner's claim is barred under *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as a new rule of procedural law, in light of what has been discussed and decided. Petitioner's position is a new rule, not subject to a *Teague* exception and therefore beyond this court's consideration as a basis to accord petitioner relief under 28 USC § 2254. Finally, even if this were considered a constitution-al violation, there is absolutely no evidence of prejudice. *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (court must be in "grave doubt" about whether the error had a "substantial and injurious effect or influence" on the verdict); *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

**14.** Petitioner has said he abandons this issue. However, in death cases of this nature, and while petitioner has himself otherwise claimed to drop his petition, out of a super abundance of caution, this issue is addressed on its merits.

at 307, 109 S.Ct. 1060. The second is if the ruling "requires the observance of those procedures that ... are implicit in the concept of ordered liberty." Id.; *Earnest v. Dorsey*, 87 F.3d 1123 (10th Cir. 1996). Neither of these exceptions has application on this issue. Obviously the requirement of payment of state post conviction counsel has not been recognized before now, in any case, as a requirement of ordered liberty.

██ A "case announces a new rule if the result was not dictated by precedent existing at the time defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. A state conviction "[becomes] final for purposes of [Teague] retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing of a petition for a writ of certiorari has elapsed or a timely filed petition has been denied." *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); *Earnest*, 87 F.3d at 1132; *Teague*, 489 U.S. at 310, 109 S.Ct. 1060. Thus, petitioner's conviction in this case was final when his petition for certiorari to the United States Supreme Court was denied. The petitioner's claim on this issue is a new rule and barred by *Teague*.

██ Further, it is barred by existing precedent. In *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) the Supreme Court indicated there was no obligation for appointment of counsel beyond the first appeal as a matter of right and as concluded in *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). See also *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). The court also said in *Finley* as to its holding in *Ross*:

> We also concluded that the equal protection guarantee of the Fourteenth Amendment does not require the ap-

pointment of an attorney for an indigent appellant just because an affluent defendant may retain one.

481 U.S. at 556, 107 S.Ct. 1990.

Therefore, the petitioner's due process and equal protection claims fail.

In *Murray v. Giarratano*, 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) the Supreme Court held its position in *Finley* and *Ross* also applied in a capital case and the defendant was not entitled to appointed counsel in a post conviction proceeding. If petitioner was not entitled to appointed counsel, he is not entitled to compensated counsel. He had the services of two highly accomplished counsel in his state post conviction proceedings. This satisfies *any* constitutional requirement.

The claim for compensated post conviction counsel is without merit.

In addition, as noted before, in the petitioner's reply to the respondent's motion to dismiss, this claim was abandoned (File Entry # 23). Further, there is no prejudice. *Brecht v. Abrahamson, supra.*

### Ineffectiveness of Counsel

The petitioner contends his trial counsel, James L. Shumate, was ineffective in his representation of petitioner and petitioner's right to counsel under the Sixth Amendment was violated.

The petitioner has raised, in this court, eight specific claims of alleged ineffectiveness of his defense counsel. (See File Entry # 2, Subsection B, paragraphs a–h).[15] Most of the claims have not been amplified in this court in petitioner's brief and were briefed and presented in the state post conviction proceedings.

### Strickland v. Washington

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) the United States Supreme Court set out the standards for consideration of an ineffectiveness of counsel claim under the

---

**15.** Petitioner raised additional claims in his state post conviction proceedings, but has abandoned those claims in this court.

Sixth Amendment. The same standard applies at trial or sentencing. *Strickland* was a capital case. *Id.* at 675, 104 S.Ct. 2052. It came before the Supreme Court on a claim for collateral relief. The court recognized a defendant has a right to effective "assistance of counsel." *Id.* at 686, 104 S.Ct. 2052 citing *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The court said the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [sentencing] cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. The court noted a capital sentencing procedure is like an adversarial trial.

The court said there are two "components" required for an assessment of ineffectiveness of counsel. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant in the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. To prevail on the failure of counsel's performance, "the defendant must show that counsel's representation fell below an *objective* standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052 (emphasis added). Reasonableness is the governing standard "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. Second guessing should not be undertaken in making the effectiveness evaluation. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and petitioner must overcome the presumption. *Id.* The stan-

dard is as of the time of the conduct; hindsight is not the point of assessment. *Id.* Counsel's statements of performance must be credited and a "heavy measure of deference [given] to counsel's judgments." *Id.* at 691, 104 S.Ct. 2052. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Matters of strategy are virtually unassailable. *Id.* at 690, 104 S.Ct. 2052. The facts of the case will determine what is reasonable. *Id.* What defendant says about the case will affect what counsel is required to do. *Id.* at 691, 104 S.Ct. 2052.

The court indicated that when "defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[16] *Id.* at 695, 104 S.Ct. 2052. "When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer, ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. 2052.

 The court may go directly to the prejudice prong of the assessment so as to avoid the burdensomeness of the ineffectiveness claim. This also applies to federal collateral proceedings. *Id.* at 697, 104 S.Ct. 2052. A finding of effectiveness by the state tribunal is not binding on the federal court, but a mixed question of law and fact. *Id.* at 698, 104 S.Ct. 2052. The state decision is at least entitled to consideration.

Most recently, the Court of Appeals for the Tenth Circuit addressed and consid-

---

**16.** That standard has no application to this case since defendant entered a plea of guilty and has not challenged the efficacy of the plea itself. *United States v. Schmidt,* 105 F.3d 82,

89–90 (2d Cir.1997); *United States v. Windsor,* 981 F.2d 943, 947 (7th Cir.1992); *Hunter v. Bowersox,* 172 F.3d 1016, 1024 (8th Cir.1999).

ered the standard. *Boyd v. Ward*, 179 F.3d 904, 913–14 (10th Cir.1999), the court said:

> To establish ineffective assistance of counsel, a petitioner must prove that counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense, depriving the petitioner of a fair trial with a reliable result. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove deficient performance, Mr. Boyd must overcome the presumption that counsel's conduct was constitutionally effective. See *Duvall v. Reynolds*, 139 F.3d 768, 777 (10th Cir.), *cert. denied*, — U.S. —, 119 S.Ct. 345, 142 L.Ed.2d 284 (1998). Specifically, he "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quotation omitted). For counsel's performance to be constitutionally ineffective, it must have been *completely unreasonable*, not merely wrong. See *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.1997).

To establish prejudice, Mr. Boyd must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; see also *Newsted*, 158 F.3d at 1090. If the alleged ineffective assistance occurred during the guilt/innocence stage, we determine whether there is a reasonable probability the jury would have had reasonable doubt regarding guilt. See *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. In assessing prejudice, we look at the totality of the evidence, not just the evidence helpful to Mr. Boyd. See *Cooks v. Ward*, 165 F.3d 1283, 1293 (10th Cir.1998).

If the alleged ineffectiveness occurred during the sentencing phase, we consider whether there is a "reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052; see also *Cooks*, 165 F.3d at 1296 (requiring court to consider strength of the government's case and the aggravating factors the jury found as well as the mitigating factors that might have been presented).

We "may address the performance and prejudice components in any order, but need not address both if [Mr. Boyd] fails to make a sufficient showing of one." *Id.* at 1292–93; see also *Davis*, 100 F.3d at 760 (noting that court can proceed directly to prejudice without addressing performance).

Therefore, the above standards must be used in determining petitioner's claims of ineffectiveness in this case.

■■■ The petitioner has the burden of proof. *Parke v. Raley*, 506 U.S. 20, 31, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Brecheen v. Reynolds*, 41 F.3d 1343 (10th Cir. 1994).

■■■ "In general, in federal postconviction relief proceedings, the burden is on the convicted person to prove his well-pleaded claim by a preponderance of the evidence." Donald E. Wilkes, Jr., *Federal Post Conviction Remedies and Relief*, § 1–7 (1996). Also, petitioner must have made an adequate record in state court or before this court to support his contention. Petitioner was granted discovery in this court, an investigator was appointed, and a hearing held to allow petitioner to present evidence on his claims. Finally, the factual findings of the state court are entitled to a presumption of correctness. *Thompson v. Keohane*, 516 U.S. 99, 109, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Steele v. Young*, 11 F.3d 1518, 1520 n. 2 (10th Cir.1993); *Brecheen v. Reynolds*, 41 F.3d at 1348 n. 1.

### Argument of Respondent to Dismiss

 Respondent contends several of the petitioner's claims with regard to ineffectiveness of counsel are barred by the standards of *Teague v. Lane, supra*. This argument cannot be accepted. The requirement of effectiveness of counsel was clearly established in *Strickland* in 1984 before petitioner's sentencing trial. Therefore, the petitioner's argument for effective counsel does not create a "new rule" under *Teague*. It is not the application of different contentions on ineffectiveness or new facts that creates a new rule. In *Strickland* the Supreme Court stated the standard, "In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the *particular* proceeding is unreliable because of a breakdown in the adversarial process ..." 466 U.S. at 696, 104 S.Ct. 2052 (emphasis added).

*Teague v. Lane, supra*, would have application if petitioner were arguing for a new rule of procedure not based on a claim of ineffectiveness of counsel. However, where ineffectiveness of counsel is the claim, it is counsel's performance that is at issue in the particular case, not a new rule. Therefore, respondent's claims of a *Teague* bar must be denied.

The respondent also claims that some of the ineffectiveness of counsel claims, as presented to this court, were not fairly presented to the Utah Supreme Court in the same manner as now presented to this court. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Therefore, respondent contends the claims are not exhausted and the petition should be dismissed.

 If a "mixed" petition of exhausted and unexhausted claims has been presented to this court, the petition could properly be dismissed without prejudice. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Harris v. Champion*, 48 F.3d 1126 (10th Cir.1994); *Hernandez*

*v. Starbuck*, 69 F.3d 1089 (10th Cir.1995) (dismissed without prejudice).

 However, if the claims were fairly presented to the Utah Supreme Court, *Parsons v. Barnes, supra*, so that that court was given fair notice of the claims, then exhaustion has occurred for purposes of 28 USC § 2254. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Humphrey v. Cady*, 405 U.S. 504, 516 n. 8, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *Bowser v. Boggs*, 20 F.3d 1060, 1063 (10th Cir.1994); *Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir.1989).

 In this case, the essence of petitioner's ineffectiveness of counsel claims were presented to and addressed by the Utah Supreme Court in *Parsons v. Barnes*, 871 P.2d at 523–30. There may be some small variances but the essence of the claim was before the Utah courts. In *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) the Supreme Court said the expansion of a federal habeas petition's facts over what was presented in state court did not circumvent the exhaustion requirement if the substance of the federal claim has been fairly presented to the state courts and the additional evidence does not fundamentally alter the claim. See *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir.1997). It is concluded under *Vasquez v. Hillary*, there has been exhaustion of petitioner's claims of ineffectiveness in this case.

 In addition, given the initial appeal and exhaustive post conviction consideration, it is concluded that it would be futile to expect the Utah Supreme Court to consider further ineffectiveness issues. This is apparent in Rule 65B(b)(5) U.R.C.P. which limits post conviction consideration under Utah law. Also, where it would be futile for a petitioner to proceed further in state court, the exhaustion requirement is excused.[17] *Bear v. Boone*,

---

17. It should be noted, respondent in its mo- tion to dismiss did not assert a specific claim

173 F.3d 782 (10th Cir.1999); *Goodwin v. Oklahoma,* 923 F.2d 156 (10th Cir.1991); *Wallace v. Cody,* 951 F.2d 1170 (10th Cir. 1991).

Therefore, this court will address the petitioner's individual ineffectiveness claims. Any variance in petitioner's claim from that presented in state courts may be defeated if the claim is without support in the record. The respondent's motion to dismiss should be denied.

### A. Failure to Investigate

■ In the petition for habeas corpus submitted by Parsons he alleges defense counsel failed to conduct an appropriate investigation "in that he did not interview key persons in the state of California which were identified to him." Petitioner's petition does not identify who these persons were and what the interview could have disclosed. The petitioner's trial brief also does not develop this issue. The evidence before this court is that defense counsel Shumate did talk to Mrs. Ernest, the deceased's estranged wife. He had her statement given to the prosecutor on September 2, 1987. He did not directly ask her about any homosexual tendencies the deceased may have had, but did ask relevant questions related to the matter. Her trial testimony was adverse to petitioner. Counsel did ask as to reasons for the estrangement of the deceased and his wife. It appears unrelated to petitioner's line of mitigation.

Also, petitioner's investigator, in this case, went to Southern California but could not uncover any evidence of the deceased being a homosexual. No evidence could be obtained from the person, Bruce Opt, the victim lived with a short time after the deceased's estrangement from his wife. Opt testified at the trial and gave no indication of any homosexual relationship. The breakup of the deceased and his wife was because she was having an affair.

The deceased, when he stayed with Opt, slept in the deceased's van (Trial Tr. Vol. III, at 827–830). There is no evidence of record of any kind that would have been a benefit to petitioner or that counsel could have obtained that would have corroborated petitioner's claim of Ernest's alleged homosexuality or otherwise have assisted his petition. The state trial habeas corpus judge concluded "the court cannot find any basis upon which to conclude that a further investigation would have yielded other information which would have affected the result." That court also noted petitioner had presented no evidence regarding any further information as to Ernest that would support a claim of homosexuality. The Utah Supreme Court also found the claim without merit. 871 P.2d at 523–24.

■ Petitioner had the right to have counsel make an adequate investigation under the facts of the case. *Strickland,* at 690–691, 104 S.Ct. 2052; *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Boyd v. Ward, supra; Brecheen v. Reynolds,* supra. However, the extent of an investigation must be based on what counsel's professional judgement dictates as reasonably likely to be helpful. *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

In this case, even if it is assumed counsel could have done more, petitioner cannot meet the prejudice requirement of *Strickland. Boyd v. Ward, supra, United States v. Blackwell,* 127 F.3d 947 (10th Cir.1997) (counsel not deficient for failure to investigate); *Ingrassia v. Armontrout,* 902 F.2d 1368, 1370–71 (8th Cir.1990). There is no merit to this claim and petitioner has not met his burden of proof to obtain relief.

### B. Plea of Guilty Without Benefit to Petitioner

The petitioner asserts ineffectiveness of counsel, because he was advised to plead

of state procedural default or other procedural bar. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, in light of this court's conclusion on

exhaustion under *Vasquez,* the fact of no claim of procedural bar is not of consequence.

guilty without getting some kind of plea benefit. The record, in this case, does not show what benefit[18] petitioner felt should have been obtained. The position that petitioner advocates would require a standard that a plea of guilty could never be entered to a charge unless there were some kind specific benefit extended to the accused by the prosecution. Petitioner has asserted no authority for that position.[19] However, it should be observed petitioner does not attack the validity of his plea of guilty or assert that he would not have pled guilty. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The plea stands unchallenged. The petitioner obviously would have been convicted. See *Miller v. Champion*, 161 F.3d 1249, 1257 (10th Cir.1998).

The Utah Supreme Court also found no challenge was made to the guilty plea. It also found petitioner did receive a benefit. It was a benefit of presenting himself to the jury as admitting culpability and presenting his claim in mitigation. *Parsons v. Barnes*, 871 P.2d at 524. He also received the benefit of not having to go through the preliminary hearing which he adamantly wished to avoid. He demanded counsel do what he had to, to avoid the preliminary hearing. The prosecutor would not extend any other benefit. He demanded a capital plea.

 The habeas corpus trial judge found it was defense counsel's legitimate trial strategy and to the petitioner's advantage not to have the same jury consider guilt or innocence and also deliberate on the sentence (Finding 25, p. 7). This makes sense.[20] The Utah capital punishment process requires the jury to find an aggravator as an element of the crime beyond a reasonable doubt. Utah Code Ann. § 76–5–202 (1985) (applicable law at time of Parson's trial). If the jury heard the evidence and made a finding of guilt on the aggravators, they would be more likely to find conclusively that the same aggravators were established beyond a reasonable doubt at the sentencing phase. The Utah death penalty process is constitutional. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Andrews v. Shulsen*, 802 F.2d 1256 (10th Cir.1986); *Pierre v. Shulsen*, 802 F.2d 1282 (10th Cir.1986). See also *State v. Bishop*, 753 P.2d 439, 460 n. 65 (Utah, 1988).

Defense counsel's strategy, as supported in the record and found by the Utah Supreme Court, was to plead guilty, and the let the jury hear the evidence once on the matters in aggravation and mitigation. Although the plea of guilty could be evidence, the jury had to consider the totality of the evidence of aggravation and mitigation. *State v. Wood*, 648 P.2d 71, 83–85 (1982).

 This strategy was obviously to limit the jury's exposure to the circumstances of the killing. The strategy choice was "well within the range of professionally reasonable judgments ..." It was "reasonable". *Strickland v. Washington*, 466 U.S. at 699, 104 S.Ct. 2052. In *Strickland* the court said strategic judgments "are virtually unchallengeable." *Id.* at 690, 104 S.Ct. 2052. The standard applies to this claim.

 The petitioner bears the burden of overcoming "the presumption that, under the circumstances, the challenged 'action might be considered sound trial strategy'."

---

**18.** *Romero v. Tansy*, 46 F.3d 1024 (10th Cir. 1995) (no prejudice shown).

**19.** The petitioner's claim in state court was that counsel erred in allowing petitioner to plead guilty. This issue appears in the state habeas judge's findings. That court found petitioner admitted to the killing, wanted to terminate the preliminary hearing which required the prosecutor to consent and that the prosecutor would not consent without an unconditional plea to capital homicide. Finally, the state habeas judge found petitioner fully considered his options before his plea of guilty.

**20.** See generally, Richard Birks, *Reconciling Loss Aversion and Guilty Pleas*, 1999 Utah L.Rev. 205 (1999).

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Boyd, supra,* 179 F.3d 904, 920. See also *Moore v. Reynolds,* 153 F.3d 1086, 1096 (10th Cir.1998). The strategy in this case was reasonable. Therefore, there was no constitutional deprivation of counsel. *United States v. Gordon,* 4 F.3d 1567 (10th Cir.1993); *United States v. Estrada,* 849 F.2d 1304, 1307 (10th Cir.1988).

The defendant's claim of no benefit from the plea of guilty must be rejected as a basis for habeas relief predicated on ineffectiveness of counsel.

### C. Juror/Witness Contact

The petitioner contends there was juror/witness contact that was not adequately evaluated by defense counsel. The Utah Supreme Court rejected the issue on direct appeal by finding no prejudice and invited error. It did not address the issue on the basis of ineffectiveness of counsel. *State v. Parsons,* 781 P.2d at 1285. If there is no prejudice, there would be no *Strickland* violation. Also, on collateral review, the Utah Supreme Court said it could find no substantive error occurred under the standard of *State v. Pike,* 712 P.2d 277, 279–81 (Utah 1985). Because no error resulted, the action of counsel could not be considered ineffective and below the standard of reasonableness.

 Improper contact with a juror can be a basis for relief from a conviction under some conditions. *United States v. McVeigh,* 153 F.3d 1166, 1186 (10th Cir. 1998). Juror-witness contact can raise a serious concern of fairness. *United States v. Resko,* 3 F.3d 684, 690 (3rd Cir.1993). However, it may also be harmless. If there is no prejudice, there is no basis for challenging the conviction. *United States v. Day,* 830 F.2d 1099, 1103 (10th Cir. 1987); *Church v. Sullivan,* 942 F.2d 1501, 1508 (10th Cir.1991). The record reflects the matter of the juror-witness contact was discussed with the court; some of the discussion was off the record. 781 P.2d 1275. Counsel for petitioner determined the matter was "harmless." *Id.* From the exchange on the record, it is concluded that counsel had investigated the matter and found no basis for further challenge.

 The state habeas judge found the conversation was "casual." Therefore, there is no showing of a basis for relief on this issue based on applicable *Strickland* standards. *United States v. Day, supra.* Consider also, *Andrews v. Shulsen,* 600 F.Supp. 408 (D.Utah 1984), aff'd, 802 F.2d 1256 (10th Cir.1986).

### D. Failure to File Formal Discovery Motions

The petitioner asserts counsel was ineffective for not filing formal discovery motions. The Utah habeas judge found that as a result of the state's open file policy, all evidence the prosecution had was presented to petitioner's counsel and there was no merit to this point. The Utah Supreme Court also made a finding to the same effect. *Parsons v. Barnes,* 871 P.2d at 525–526.

 The Utah discovery rule, Rule 16, U.R.Cr.P., imposes a broader standard for the prosecution obligation of disclosure than does Rule 16, F.R.Cr.P. See Rule 16(a)(5) U.R.Cr.P. The prosecutor is obligated to make disclosure on a continuing basis without a request. *State v. Carter,* 707 P.2d 656 (Utah 1985); *State v. Knight,* 734 P.2d 913 (Utah 1987). The prosecutor is obligated to disclose unrequested information. *State v. Worthen,* 765 P.2d 839 (Utah 1988). The *Knight* case imposed a strong obligation on the prosecutor to present the defendant with all material evidence even if not exculpatory. See also *State v. Kallin,* 877 P.2d 138 (Utah 1994).

Of course, the standards in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) and *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), also applied. See also *Strickler*

v. Greene, —— U.S. ——, 119 S.Ct. 1936, —— L.Ed.2d —— (1999) (no *Brady* violation where the result would not have been different if initially disclosed). Petitioner has not claimed any violation of the prosecution obligation to disclose. It is apparent petitioner received everything he was entitled to receive.

Rule 16(e) U.R.Cr.P. provides for informal discovery, *Parsons v. Barnes*, 871 P.2d at 525. This approach was pursued in this case. The petitioner received everything the prosecution had.

■ There is no evidence of any withheld evidence or the necessity for petitioner's counsel to have filed a formal motion for discovery. There is no showing that a formal motion would have produced anything helpful to petitioner that was not produced. Petitioner has not shown any prejudice. *United States v. Cortes*, 895 F.2d 1245 (9th Cir.1990) (no prejudice from failure to make discovery motion). Petitioner's claim fails under *Strickland*. *Strickler v. Greene*, *supra*. The record does not support petitioner's claim *C.f. U.S. v. Snow*, 48 F.3d 198 (6th Cir.1995).

### E. Advice of Counsel that Preliminary Hearing Could Only Be Waived if Petitioner Pled Guilty

The petitioner was advised by defense counsel that he could not waive a preliminary hearing unless he pled guilty. Petitioner contends that counsel's advice was ineffective. He does not articulate how that advice was either incorrect or that it was prejudicial to him. It is significant to again observe that no challenge is made as to the voluntariness of petitioner's plea or that he would not have pled guilty or would have insisted on a trial on guilt. *Hill v. Lockhart*, *supra*.

The record is clear petitioner did not want a preliminary hearing and wanted defense counsel to do anything he had to do to avoid further preliminary hearings. He did not want to hear the evidence. *Parsons v. Barnes*, 871 P.2d at 525. Rule

7(g)(1) U.R.Cr.P. provides that a felony defendant may only waive a preliminary hearing with the consent of the prosecutor. See also 871 P.2d at 525. This has long been the rule in Utah. *State v. Sheffield*, 45 Utah 426, 146 P. 306, 308 (Utah, 1915).

■ Therefore, petitioner had no unilateral right to waive the preliminary hearing. The record in the case is also positive that the prosecutor would not waive the State's right to a preliminary hearing unless the petitioner pled guilty as charged. Therefore, the advice given by defense counsel to petitioner was correct. It was exactly what the prosecutor insisted on. Petitioner has not otherwise shown his plea was involuntarily entered. Petitioner may not have liked the information he was given by counsel, although the record is firm he accepted it, but it was still correct information under the circumstances.

■ In addition, petitioner has shown no prejudice. The petitioner consistently admitted his crime and has never sought to withdraw his plea. He has shown no basis for a claim of prejudice. *Parsons v. Barnes*, 871 P.2d at 525.

Petitioner's argument on this point fails both prongs of the *Strickland* requirement on ineffectiveness of counsel.

### F. Inadequate Consultation by Defense Counsel with Petitioner

■ The petitioner contends counsel did not spend adequate time with him. The record reflects counsel interviewed petitioner at their first meeting. Petitioner and counsel spent about twenty hours together according to counsel, and counsel also spent hundreds of hours of time in research and preparation. Petitioner was on the witness stand for an extensive period of time (Vol. IV, at 8, State trial record at 1000–1144). The record shows defense counsel put petitioner's history, the facts of the case, and his background and plea before the jury fully and in a comprehensive form. Other evidence was also presented. There was no showing of unpreparedness. Petitioner has pointed to no

evidence that was left out. The petitioner has shown no deficiency in the presentation of petitioner's case or what could have been developed from further consultation.

In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) the Supreme Court refused to find a structural denial of the right to counsel because of defense counsel's extrinsic failures but said the circumstances of performance must be assessed. "Extrinsic ineffectiveness" would not be a basis for relief. Rather, counsel's performance had to be examined. In this case, Shumate was an aggressive and loyal advocate. Actual deficiency must be demonstrated. Id. at 665, 104 S.Ct. 2039. It has not.

 There is no set time counsel must spend with a defendant. The circumstances of each case will govern. See *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Inadequate consultation can only be found from a specific deficiency, in the record, *Cronic, supra,* absent a total absence of consultation. In this case, petitioner has alleged no such deficiency. Conclusory allegations as to insufficient consultation cannot support an ineffectiveness claim in the absence of demonstrated prejudice. *U.S. v. Mealy*, 851 F.2d 890 (7th Cir.1988); *Huffington v. Nuth*, 140 F.3d 572 (4th Cir.1998); *United States v. Miller*, 907 F.2d 994 (10th Cir.1990).

### G. Failure to Object to Special Verdict Questions

Petitioner contends his trial counsel was ineffective with regard to the special verdict form the trial judge submitted to the jury at the sentencing hearing. The argument in petitioner's trial brief sets forth the basis of counsel's alleged ineffectiveness (File Entry # 38 at 9). The peti-

tioner argues the verdict form split the robbery aggravator and pecuniary gain aggravator into two separate aggravators whereas under the circumstances of the case, where the robbery was for gain, only one aggravator was properly involved. The Utah Supreme Court agreed in *Parsons v. Barnes*, 871 P.2d at 528.[21] However, the Utah court found the error harmless in light of the instructions given to the jury on the weighing requirements under Utah law.

 The second claim that petitioner makes is the special verdict form contained an aggravator question not referenced in the indictment or statute, asking if petitioner was a person on parole knowingly possessing a firearm. However, the Utah Supreme Court[22] said, "In the penalty phase, the sentencer may consider any relevant facts in aggravation or mitigation of the penalty. See Utah Code Ann. § 76–3–207(2). Inclusion in section 76–5–202 [murder in the first degree, now aggravated murder statute] is not a prerequisite for consideration by the sentencing body." *Parsons v. Barnes*, 871 P.2d at 527. Therefore, it was proper under Utah law for the jury to consider the parolee/firearm aggravating circumstance. Since petitioner was not charged in the information with that aggravating circumstance and had not pled guilty or admitted it, it was proper under Utah law to identify it for the jury in the special verdict. This is in accord with other Utah decisions on the scope of aggravating circumstances *State v. Wood, supra*. Under Utah law a specific statutory aggravator must be found at the guilt stage, but other aggravating circumstances and mitigating circumstances can be considered at sentencing. "Nothing in the Utah death penalty statutes requires that

---

21. Prior to the *Parsons v. Barnes* decision, the Utah courts had not resolved the duality of the pecuniary gain aggravator in a robbery case. In *State v. Shaffer*, 725 P.2d 1301 (Utah 1986), the court held where the jury had convicted defendant of aggravated robbery the court could uphold the verdict without consideration of the personal gain factor.

The opinion gave no indication each statutory aggravator could not be considered, but the case did show their connection.

22. Actually a slightly different variation of the argument was presented to the Utah Supreme Court. *Parsons v. Barnes*, 871 P.2d at 527.

the State present all statutorily defined aggravating circumstances during the guilt phase.... Therefore, the jury may consider these [aggravating] factors in the penalty phase even when the factors were not introduced during the guilt phase of the trial." *State v. Young,* 853 P.2d 327, 352 (Utah, 1993); *State v. Carter,* 888 P.2d 629, 649 (Utah, 1995); *State v. Archuleta,* 850 P.2d 1232 (Utah, 1993); *State v. Taylor,* 818 P.2d 1030, 1033 (Utah, 1991); *State v. Gardner,* 789 P.2d 273 (Utah, 1989).

In the first *Parsons* appeal, 781 P.2d at 1282, the Utah Supreme Court held the inclusion of the other aggravating circumstances to be proper under Utah law. Therefore, since the other aggravating circumstance contained in the special verdict was a matter for proper consideration by the jury under Utah law, the only basis for a claim of ineffectiveness would be if there was, at the time, a legitimate basis for objection under the United States Constitution.[23] Petitioner has shown no rule of federal law that would make the Utah process unconstitutional.

It has been said the function of the aggravating factors is not to give notice to potential defendants that their contemplated conduct is at risk, but rather to guide the sentencer. *Poland v. Stewart,* 92 F.3d 881 (9th Cir.1996). In this case, the special verdict inclusion of the parolee/firearm factor narrowed the focus and aided the jury.

■ In *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), the court indicated the Eighth Amendment does not require that the jury, in a death sentencing case, evaluate the weight of a given aggravating circumstance to determine if the death penalty is justified. However, Utah law does require it. *State v. Wood, supra.* The special

verdict submission, in this case, required a finding of proof beyond a reasonable doubt. Thus, the conditions imposed by the trial judge operated beneficially to petitioner, and exceeded the standards required by the United States Constitution.

Further, the Supreme Court has clearly approved of jury consideration of non-statutory aggravating factors in the sentencing phase of a capital case. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Barfield v. Harris,* 719 F.2d 58, 61 (4th Cir.1983) (relying on *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)); *Lindsey v. Smith,* 820 F.2d 1137, 1154 (11th Cir.1987) (non-statutory aggravating factor properly considered under Alabama law); *Lesko v. Owens,* 881 F.2d 44, 59 (3rd Cir.1989); *Mathenia v. Delo,* 975 F.2d 444, 451 (8th Cir.1992); *United States v. McCullah,* 76 F.3d 1087, 1108 (10th Cir.1996) (non statutory aggravator is permissible); *United States v. Glover,* 43 F.Supp.2d 1217 (D.Kan.1999); *Tillman v. Cook,* 25 F.Supp.2d 1245, 1281 (D.Utah 1998). Consider also *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *Hatch v. Oklahoma,* 58 F.3d 1447, 1465 (10th Cir.1995) (non statutory evidence admissible).

■ Therefore, petitioner's argument on the consideration of a non statutory aggravating circumstance in the special verdict as being ineffectiveness of counsel for counsel's failure to object fails the first prong of the *Strickland* standard. Further, there were other aggravators as well and no prejudice could be shown. *Zant v. Stephens, supra.* Therefore the prejudice prong of *Strickland* fails on this issue as well.

---

**23.** It should be underscored that petitioner is presenting this challenge on the basis of ineffectiveness of counsel and not as a specific substantive issue. If it were presented as a substantive issue, the constitutional requirement, unless limited by *Teague v. Lane, supra,* see *Lambrix v. Singletary,* 520 U.S. 518, 117

S.Ct. 1517, 137 L.Ed.2d 771 (1997), could be examined without regard to federal law not yet articulated at the time. However, as an issue of ineffectiveness of counsel, hindsight is inappropriate and competency must be assessed by what the law or circumstance was at the time.

Finally, petitioner suggests the special verdict was weighted towards a death penalty and an objection should have been raised by defense counsel. Therefore, two arguments remain for further consideration; first, the failure to object as to the robbery and pecuniary gain aggravators as duplicative, and second, the failure to object to the special verdict question as being allegedly weighted in favor of death.

1. The Utah Supreme Court did find it was improper for the statutory aggravator of pecuniary gain to be used in robbery cases where the taking in the robbery involved the element of taking for the robbers benefit. However, the examination of counsel's failure to object cannot be based on hindsight. This issue is not a situation where the trial judge's special verdict is challenged on its substantive merits. It is a situation where the challenge is to counsel's failure to object. As the Utah Supreme Court noted, this special verdict involving possible duplicity occurred in the sentencing phase, not on guilt. The specific claim of error had not been previously resolved, but the Utah court said, "In failing to object to the special verdict form on these grounds, counsel's performance fell below an objective standard of reasonableness." *Parsons v. Barnes.* 871 P.2d at 528. The conclusion is questionable because the court applied a hindsight standard and no decision from the Utah Supreme Court or the United States Supreme Court had previously reached that conclusion or given any indication of impropriety. The Utah court simply found that because it believed the trial court committed error, and counsel had not objected, the reasonableness standard was violated. The court did not consider whether counsel should have anticipated the Utah court's ruling or whether the state of the law at the time of sentencing would put counsel on notice. It did not consider or refer to the "hindsight" limitation of *Strickland.*

In *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), defen-

dants killed guards in conjunction with a bank van robbery. The Arizona court had held the "pecuniary gain" aggravator could be applied in reversing a contrary ruling of the trial court. The defendant claimed double jeopardy on retrial on that issue because of the trial court's ruling. The United States Supreme Court considered the jeopardy issue and found no violation. In passing on the issue, the Supreme Court said, "Aggravating circumstances are not separate penalties or offenses, but are 'standards to guide the making of [the] choice' between alternative verdicts of death and life imprisonment." *Id.* at 156, 106 S.Ct. 1749. There is nothing in *Poland* that would alert counsel as to a legitimate constitutional challenge to the overlapping aggravators found improper in this case. It should also be observed that robbery was not an aggravator in the Arizona prosecution.

In *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the defendant argued that counsel was ineffective in failing to object to using both an aggravator of robbery and killing for pecuniary gain that occurred during the robbery. The argument was that Eighth Circuit law at the time had held the use of the dual aggravators to be improper. *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.1985). The Arkansas Supreme Court had rejected the claim without considering whether to follow *Collins.* The federal district court on habeas consideration found counsel had a duty to have been aware of the *Collins* case (it was precedent in the 8th Circuit and Arkansas is an Eighth Circuit state). The district court granted relief. The Court of Appeals for the Eighth Circuit affirmed. However, two years earlier the Eighth Circuit had, based on *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), overruled *Collins. Perry v. Lockhart,* 871 F.2d 1384 (8th Cir. 1989). The Supreme Court observed, "We held that in order to determine whether counsel performed below the level expected from a reasonably competent attorney,

it is necessary to judge ... counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Fretwell,* 506 U.S. 364, 113 S.Ct. at 844 (emphasis added) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). See also *Brecheen v. Reynolds,* 41 F.3d at 1365 (viewed "from the perspective of counsel at the time."). In this case, the Utah Supreme Court did not focus on that point, but treated the error without consideration of the law at the time of trial, but rather as the Utah court determined it to be in 1989. The United States Supreme Court, referring to the reasonable counsel standard, said:

> We adopted the rule of contemporary assessment of counsel's conduct because a more rigid requirement "could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." But the "prejudice" component of the *Strickland* test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

506 U.S. at 372, 113 S.Ct. 838, (citations omitted).

However, in *Lockhart v. Fretwell, supra,* the court found no prejudice as to the second prong of *Strickland.* It observed:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." .... Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Id.* at 369–70, 113 S.Ct. 838 (citations and footnotes omitted).

The court found no *Strickland* prejudice because there was no fundamentally unfair result nor the proceedings defective. Thus on the very issue of the "double counting" the law is still not precisely settled as to that factor in this case.

In *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996), the court held aggravating factors that defendant intentionally killed the victim, intentionally inflicted serious bodily injury resulting in death, intentionally engaged in conduct intending the victim be killed or that lethal force be employed against the victim, and that defendant engaged in conduct that he knew would create a grave risk of death to a person and resulted in death, were valid aggravators in a federal death penalty case, even though they did not narrow the field of death-eligible defendants.

However, as to the overlap at the penalty phase in a federal death penalty prosecution, the court said:

> The district court also submitted to the jury both the Section 848(n)(1)(C) and (n)(1)(D) statutory aggravating factors. The (n)(1)(D) factor requires that the defendant intentionally engages in conduct which he knows creates a grave risk of death and that such death results. 21 USC § 848(n)(1)(D). This substantially overlaps with the (n)(1)(C) factor which refers to intentional conduct intending that the victim be killed. See 21 USC § 848(n)(1)(C). Any intentional conduct aimed at producing death is by definition conduct done with knowledge of grave risk of death. While the factors are not identical per se, the (n)(1)(C) factor necessarily subsumes the (n)(1)(D) factor.
>
> Such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally. *Cf. Stringer v. Black,* 503 U.S. 222, 230–

32, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992). As the Supreme Court of Utah pointed out, when the same aggravating factor is counted twice, the "defendant is essentially condemned 'twice for the same culpable act,'" which is inherently unfair. *Parsons v. Barnes,* 871 P.2d 516, 529 (Utah) (quoting *Cook v. State,* 369 So.2d 1251, 1256 (Ala.1978)), cert. denied, 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). While the federal statute at issue is a weighing statute which allows the jury to accord as much or as little weight to any particular aggravating factor, the mere finding of an aggravating factor cannot but imply a qualitative value to that factor. *Cf. Engberg v. Meyer,* 820 P.2d 70, 89 (Wyo. 1991). When the sentencing body is asked to weigh a factor twice in its decision, a reviewing court cannot "assume it would have made no difference if the thumb had been removed from death's side of the scale." *Stringer,* 503 U.S. at 232, 112 S.Ct. at 1137. In *Stringer* the Supreme Court made it clear that:

> When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.

*Id.* We hold that the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors.

*McCullah,* 76 F.3d at 1111–12.

However, this was considered as a substantive defect and was not considered with regard to ineffectiveness of counsel, which is a significantly different issue, and the substantive claim is not before this court on Parsons' petition.

In *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), relied on by the Tenth Circuit for the conclusion reached in *McCullah,* which case was de-cided after the petitioner's case, the Court also said:

> That Mississippi is a weighing State only gives emphasis to the requirement that aggravating factors be defined with some degree of precision. By express language in *Zant* we left open the possibility that in a weighing State infection of the process with an invalid aggravating factor might require invalidation of the death sentence. *Id.,* at 890, 103 S.Ct. 2733. Although we later held in *Clemons v. Mississippi* that under such circumstances a state appellate court could reweigh the aggravating and mitigating circumstances or undertake harmless-error analysis, we have not suggested that the Eighth Amendment permits the state appellate court in a weighing State to affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process.
>
> We require close appellate scrutiny of the import and effect of invalid aggravating factors to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases. See *Zant, supra,* at 879, 103 S.Ct. 2733; *Eddings v. Oklahoma,* 455 U.S. 104, 110–112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 601–605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion); *Roberts v. Louisiana* 431 U.S. 633, 636–637, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977); *Gregg v. Georgia,* 428 U.S. 153, 197, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens JJ.); *Woodson v. North Carolina,* 428 U.S. 280, 303–304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion). In order for a state appellate court to affirm a death sentence after the sentencer was instructed to consider an invalid factor, the court must determine what the sentencer would have done absent the factor. Otherwise, the defendant is deprived of the precision that individualized consideration de-

mands under the *Godfrey* and *Maynard* line of cases.

*Stringer,* 503 U.S. at 230–31, 112 S.Ct. 1130.

Subsequently, in *Tuggle v. Netherland,* 516 U.S. 10, 116 S.Ct. 283, 133 L.Ed.2d 251 (1995), the court again said invalidation of one aggravator does not necessarily require a death sentence to be set aside.

The *Springer* case again made a direct substantive analysis and did not make an ineffectiveness of counsel consideration. However, in petitioner's case on post conviction appeal, *Parsons v. Barnes, supra,* the Utah Supreme Court made such an analysis. The Utah Court did not make the *Strickland* analysis expressed in *Lockhart v. Fretwell, supra.* That case had not yet been decided at the time of Parsons' post conviction appeal. However, the court did make a "no prejudice" and "harmless error" analysis and found no impairment to a fair trial from the duality of the "robbery"/"pecuniary gain" factors. The court found no prejudice under the ineffectiveness analysis in *Strickland.*

 Based on the prior discussion and analysis it is concluded petitioner's counsel did not act unreasonably *at the time* in not making an objection to the robbery/pecuniary gain special verdict. The law at the time (1987–88), would not have made reasonable counsel aware of the possible claim of overlap or duality. Therefore, the first prong of the ineffectiveness analysis is lacking.

 Second, if counsel's conduct was below the standard required of reasonably competent counsel, under *Lockhart v. Fretwell, supra,* counsel's conduct did not prejudice petitioner. This conclusion is based on the fact that the standard applicable under *State v. Wood,* supra, requires a high standard of weighing before the death penalty can be imposed. Not only must the totality of aggravating circumstances outweigh the totality of the mitigating circumstances beyond a reasonable doubt, but the jurors must also find be-

yond a reasonable doubt that the death penalty is just and appropriate under the circumstances. The jury was properly instructed on this standard.

 In addition, the jury was specifically advised if the special verdict finding was "no" or less than unanimous, it could not consider the circumstance for aggravation purposes. See *Parsons v. Barnes,* 871 P.2d at 529. This is a further narrowing of the aggravating circumstance consideration beyond *Wood.* It was potentially very favorable to petitioner. *Id.* at 529. Also, the jury was instructed to weigh the aggravating and mitigating circumstance *"not in terms of the relative numbers* of the aggravating and mitigating factors, but in terms of their respective *substantiality and persuasiveness." Id.* Thus any duality would be of no real significance. This clearly advised the jury they were to weigh the substance of the evidence but only consider an aggravator found unanimously and beyond a reasonable doubt. It is presumed the jurors remained true to their oath and followed the instructions. *United States v. Armendariz,* 922 F.2d 602, 606 (10th Cir.1990); *United States v. Davis,* 1 F.3d 1014, 1016 (10th Cir.1993); *United States v. Cooley,* 1 F.3d 985 (10th Cir.1993); *United States v. Wiles,* 102 F.3d 1043 (10th Cir.1996). If that's the situation, any double counting would have been insignificant.

Utah is a weighing state in the penalty phase of a capital prosecution. However, it is not a state that requires counting of aggravators or the finding of any specific aggravator. To that extent, *Stringer* is not directly the same. The Utah process is akin to the Georgia system in the penalty phase rather than the Mississippi system discussed in *Stringer,* 503 U.S. at 229–230, 112 S.Ct. 1130. Utah imposes a standard under *State v. Wood, supra,* that requires the jury to find that the total aggravating *circumstances* outweigh the totality of mitigating *circumstances* beyond a reasonable doubt. This reality coupled with the instruction given could hard-

ly cause a jury to be seriously influenced by any duplication of robbery and pecuniary gain in the special verdict. Utah is a peculiar weighing state and that reality must be considered. The standard in Utah in the penalty phase imposition of a death sentence is the most demanding in the country. Colorado and Arkansas are close and similar, but Utah's standard is very demanding. Therefore, it cannot be said defense counsel acted unreasonably in not objecting to the special verdict form.

In addition, from a consideration of the extent of the evidence presented at trial and the conduct of the proceedings in total, it must be concluded the result was not fundamentally unfair or deficient. Therefore, under *Lockhart v. Fretwell, supra,* the prejudice prong of *Strickland* has not been established by petitioner to have been violated and to provide a basis for relief.

Finally, petitioner contends the state trial judge unfairly weighted the special verdict questions presented to the jury towards the death penalty and that this created an unfair imbalance in favor of death. An analysis of this question requires a recognition of the trend in Utah Supreme Court opinions favoring the use of special verdicts in criminal cases in certain circumstances.[24] The Utah Supreme Court has said that special verdicts are prepared in the discretion of the court to aid the jury and to aid the appellate court in determining what has been found. The use of a such a verdict was suggested for use in a capital case on aggravators. *State v. Shaffer,* 725 P.2d 1301, 1314 n. 3 (Utah 1986); *State v. Tillman,* 750 P.2d 546 (Utah 1987); *State v. Lafferty,* 749 P.2d 1239, 1260 n. 16 (Utah, 1988). Utah decisions have recognized broad discretion in the trial judge in a criminal case to submit special interrogatories to the jury. *State v. Allen,* 839 P.2d 291, 298 (Utah, 1992),

but the defendant should consent. *State v. Bell,* 770 P.2d 100, 109 (Utah, 1988). See in addition, *State v. Carter,* 888 P.2d 629 (Utah, 1995); *State v. Wood,* 868 P.2d 70, 89 (Utah, 1993).

The United States Supreme Court has said the required constitutional narrowing in death penalty cases can occur at either the sentencing or the guilt phase of a capital trial. *Lowenfield v. Phelps,* 484 U.S. at 244–45, 108 S.Ct. 546. At sentencing, a narrowing can occur by requiring the sentencer to determine whether aggravating circumstances justify the death penalty. *Zant v. Stephens,* 462 U.S. at 878, 103 S.Ct. 2733; *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and as noted before, both statutory and non-statutory aggravating circumstances may be considered. *Zant v. Stephens,* 462 U.S. at 878, 103 S.Ct. 2733.

In this case, the conscientious trial judge engaged in additional narrowing by the special verdict that directed the jury's judgment *only* to three aggravators and questioned the jury if these aggravators were found beyond a reasonable doubt. The jury was informed they could not consider an aggravating circumstance not found beyond a reasonable doubt as an aggravator in the ultimate verdict. (Instruction No. 27, p. 283, State record). The effect of this was an obvious narrowing of the aggravating evidence and was favorable to petitioner in its structure. It is of no actual consequence that the jury resolved the evidence and issues against the petitioner.

 Petitioner contends something should have been submitted on mitigation. However, there is a flaw in that argument. Aggravating and mitigating circumstances are not the same as regards constitutional consideration in the capital sentencing process. A jury must be permitted to give full effect to all relevant mitigating evi-

---

24. In *Tillman v. Cook,* 25 F.Supp.2d 1245 (D.Utah 1998), this court held defendant was not denied due process because a general verdict was given on a capital case. Also, the court noted that although the state of the law in the United States preferred a general verdict in criminal cases, special verdicts were not precluded. *Id.* at 1288–90.

dence. *Hitchcock v. Dugger*, 481 U.S. 393, 394, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). See also *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Brecheen v. Reynolds*, 41 F.3d 1343, 1367–68 (10th Cir. 1994). A jury is impermissibly constrained on mitigation if an instruction (or verdict form) would prevent consideration of relevant mitigation evidence. See *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

Instructions must be carefully drawn not to restrict consideration of mitigating evidence factors. See *McKoy v. North Carolina*, 494 U.S. 433, 444, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (error found as to the danger of an instruction on consideration of mitigation evidence). Also, *Mills v. Maryland*, 486 U.S. 367, 384, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (sentence vacated when an instruction could reasonably be construed to require unanimity on mitigation evidence); also *Kubat v. Thieret*, 867 F.2d 351, 373 (7th Cir.1989). Where the court instructs on a unanimity requirement as to an aggravator but does not specifically address mitigation, but does provide a general instruction on it, there is no substantial likelihood a jury will be misled. *Arnold v. Evatt*, 113 F.3d 1352, 1363 (4th Cir.1997); *James v. Whitley*, 926 F.2d 1433, 1448–49 (5th Cir.1991); *Powell v. Bowersox*, 112 F.3d 966, 970–71 (8th Cir.1997); *Davis v. Executive Dir. of Dept. of Corrections*, 100 F.3d 750, 776 (10th Cir.1996) (no chance of instructional confusion); *Coe v. Bell*, 161 F.3d 320, 336–40 (6th Cir.1998) (no substantial possibility that jury instruction requiring unanimous finding of presence or absence of aggravating factors, or that aggravating factors outweigh mitigating circumstances, would mislead jury to believe that unanimity required on existence of mitigating circumstances); *Weeks v. Angelone*, 176 F.3d 249 (4th Cir.1999).

 Lack of a specific mitigation instruction is not inappropriate where a general instruction is given. *Graham v. Collins*, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993); *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Of course, a state may give some structured mitigation instruction if it does not confine or preclude the jury's proper consideration. *California v. Brown*, 479 U.S. 538, 542, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Johnson v. Texas, supra; Buchanan v. Angelone*, 522 U.S. 269, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998). However, aggravating factors and mitigation circumstances are two different features and are not matters that are equally in balance in function. Therefore, it is appropriate to submit a narrowing verdict form on aggravators but not on mitigation evidence. There is significant danger in giving a potentially confining mitigation direction under the intention of a special verdict. It would be much more difficult and risky to give a mitigation special verdict question under the Utah weighing process. There could be serious constitutional pitfalls. Therefore, the trial judge in this case, did not commit error or act unconstitutionally in giving the special verdict form on aggravation. This is especially the case when considered with the instructions otherwise given the jury. A mere possibility of improper application of instruction is insufficient to establish a constitutional violation. *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In this case, the petitioner's argument is not supported on this issue and is analytically erroneous. It is no more than speculation.

Petitioner's claim that the special verdict form was prejudicial and misbalanced has not been shown. Therefore, petitioner's argument fails on both prongs of *Strickland*. If there was no error, counsel was not required to object. Also, the prejudice factor is clearly not present.

### H. Failure of Counsel to Explore a Change of Venue

 The petitioner claims counsel should have explored a change of venue

because some jurors had heard of the case. Petitioner has not shown in the record where the jurors manifested any kind of strong bias or hostility towards the petitioner. See *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). There is no record of extensive pretrial publicity. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Petitioner has not marshaled the record to show a factual basis for a claim that a change of venue was required. In the state post conviction proceedings petitioner raised the issue as one of inadequate voir dire. *Parsons v. Barnes*, 871 P.2d at 526. The court noted that each juror indicated he or she could set aside any outside information and base their verdict on the evidence presented. *Id.* Five jurors had read a report of the incident in a local paper. One juror saw a television report (which would have been statewide) but couldn't remember what had been said. Three jurors had heard nothing. The Utah Supreme Court found petitioner had not developed [25] the record, and the claim failed under the prejudice standard of *Strickland*. If the record is inadequate, the claim of departure from the standard of reasonable counsel also fails.

In *Irvin v. Dowd, supra*, eight of twelve jurors had said they thought the defendant was guilty and there was also widespread publicity of a potentially prejudicial nature. No such evidence is before this court in this case. Petitioner does not assert that any juror remained on the panel that should have been challenged for cause. *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); *United States v. McCullah*, 76 F.3d 1087, 1094 (10th Cir.1996). Where there is no record of juror bias, a change of venue is not required under Utah law. *State v. Pearson*, 943 P.2d 1347 (Utah,

1997); *State v. Price*, 909 P.2d 256 (Utah App.1995). No actual juror bias is shown in this case. No implied bias exists. No prejudice is shown. *State v. Olsen*, 869 P.2d 1004 (Utah App.1994). See also *State v. Gardner*, 789 P.2d 273, 277 (Utah, 1989) (capital prosecution no error found on venue claim).

In *Taylor v. Warden*, 905 P.2d 277 (Utah, 1995), the court found counsel for a capital defendant not to be ineffective in failing to move for a change of venue where there was no showing of a different outcome or that counsel would have prevailed on the motion.

In *Gillihan v. Rodriguez*, 551 F.2d 1182 (10th Cir.1977), the court found no ineffectiveness based on counsel's failure to move for a change of venue. The circumstances were found that the publicity was not significant. See also *Baldwin v. Johnson*, 152 F.3d 1304 (11th Cir.1998) (no ineffectiveness in the decision not to seek change of venue); *Provenzano v. Singletary*, 148 F.3d 1327 (11th Cir.1998) (no ineffectiveness found in strategic decision not to move for a change of venue); *Cox v. Norris*, 133 F.3d 565 (8th Cir.1997) (same); *Sharp v. Johnson*, 107 F.3d 282 (5th Cir. 1997) (no valid claim of ineffectiveness where counsel did not move for a change of venue in a capital case).

In this case, both the petitioner and the victim were from outside the State of Utah. This was not a situation where a local citizen was the victim and the defendant a transient. The voir dire and jury selection by the trial judge, with counsel, was extensive and very thorough covering 498 pages of transcript (Pl.Exh.P. 8, Vol. IA & IB). The record has been examined by the court and it is apparent there was *no basis* for a change of venue.

It is concluded petitioner's argument on this issue fails both prongs of the *Strick-*

---

**25.** Petitioner is obligated to establish the record basis for his claim. See *United States ex rel Darcy v. Handy*, 351 U.S. 454, 464, 76 S.Ct. 965, 100 L.Ed. 1331 (1956) ("There is nothing in the record to show, as a 'demonstrable reality' that petitioner was denied due process of law because of community hysteria and prejudice.").

**1184**

*land* standard. The prejudice prong also fails because there is no showing of unfairness or that the verdict was unreliable. *Lockhart v. Fretwell, supra.*

## Conclusion

Petitioner has raised a number of issues in challenge of his capital conviction and death sentence. Some claims are of little merit, others have required careful and prolonged consideration. In a death penalty case, the petitioner is entitled to careful, individualized consideration of his conviction and sentence. This court does not take this responsibility lightly. *Tillman, supra.* Death cases, as is shown in this case, are enormously complex and the applicable law is a specialized realm of its own. Necessarily this requires time to carefully review the case under 28 USC § 2254. That has been done in this case. Petitioner has shown no basis for relief and his petition for habeas corpus under 28 USC § 2254 should be **Denied.**

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the court, pursuant to 28 USC § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

July 1, 1999